CITY OF MADISON, Plaintiff-Respondent,

v.

Richard M. POLENSKA, Defendant-Appellant.

Court of Appeals

*No. 86–1858. Argued November 12, 1987.—Decided February 18, 1988.*

(Also reported in 421 N.W.2d 862.)

For the defendant-appellant there were briefs by *Lester A. Pines* and *Cullen, Weston, Pines & Bach* of Madison, and oral argument by *Lester A. Pines.*

For the plaintiff-respondent there was a brief by *Henry A. Gempeler,* city attorney, and *James L. Martin,* assistant city attorney, and oral argument by *James L. Martin,* assistant city attorney.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.   Richard Polenska appeals from a judgment of conviction entered after the trial court found him guilty of violating Madison General Ordinances (MGO) sec. 12.42(1)(c)1., which adopted sec. 346.37(1)(c)1., Stats.[1] Section 346.03[2] exempts emergency vehicle operators from several rules of the road,

[1] Section 346.37(1)(c)1., Stats., provides:

Vehicular traffic facing a red signal shall stop before entering the crosswalk on the near side of an intersection, or if none, then before entering the intersection or at such other point as may be indicated by a clearly visible sign or marking and shall remain standing until green or other signal permitting movement is shown.

[2] Section 346.03, Stats., provides in pertinent part:

(1)   The operator of an authorized emergency vehicle, when responding to an emergency call ... may exercise the privileges set forth in this section, but subject to the conditions stated in subs. (2) to (5).

(2)   The operator of an authorized emergency vehicle may:

(a)   Stop, stand or park, irrespective of the provisions of this chapter;

(b)   Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(c)   Exceed the speed limit;

(d)   Disregard regulations governing direction of movement or turning in specified directions.

. . . .

(5)   The exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive with due regard under the circumstances for the safety of all persons nor do they protect such operator from the consequences of his reckless disregard for the safety of others.

subject to some conditions. The issue is whether sec. 346.03(5) qualifies the exemptions granted by sec. 346.03(2)(b), and if not, whether sec. 346.03(2)(b) is unconstitutionally vague.[3]

We conclude that sec. 346.03(5), Stats., qualifies the privileges granted by secs. 346.03(1) to (4). We accept the trial court's finding that defendant entered an intersection at forty miles per hour against a red signal while aware that another car was going through the intersection. From that finding we conclude that defendant did not drive with due regard for the safety of all persons. We therefore affirm.[4]

The parties do not dispute the relevant facts. Defendant was operating an ambulance on an emergency call. He had activated his sirens and flashing lights. The speed limit in the area was thirty miles per hour. Defendant was traveling about forty-five to fifty miles per hour, about 400 feet from an intersection governed by a traffic signal, when he noticed that the signal was red. His partner pointed out a white car approaching the intersection from the right, and defendant watched the car for one or two seconds. He did not see the car stop, though he expected it to do so because he observed the car's front end dip. He took his foot off the accelerator. The white car then accelerated into the intersection. Defendant tried to

---

[3]The due process clause of the fourteenth amendment to the United States Constitution, and art. I, sec. 8, of the Wisconsin constitution require statutes to be sufficiently definite to give persons of ordinary intelligence who wish to abide by the law notice of the proscribed conduct. *Bachowski v. Salamone,* 139 Wis. 2d 397, 406, 407 N.W.2d 533, 537 (1987).

[4]Because we affirm under sec. 346.03(5), Stats., we need not consider whether sub. (2)(b) is unconstitutional.

apply his brakes, but the ambulance struck the car almost broadside.

The trial court found that the "defendant was aware of the white car and aware that it had not stopped and yet he entered the intersection against the red light at a speed of at least 40 MPH."

■

Though the interpretation of an ordinance is a question of law, *Hansman v. Oneida County,* 123 Wis. 2d 511, 514, 366 N.W.2d 901, 903 (Ct. App. 1985), we defer to a trial court's findings unless they are clearly erroneous. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). There is virtually no evidence contradicting the trial court's findings. We therefore accept its findings, and consider whether defendant violated MGO sec. 12.42(1)(c)1.

Section 346.03(1), Stats., permits the operator of an authorized emergency vehicle to "exercise the privileges set forth in this section, but subject to the conditions stated in subs. (2) to (5)." One of the privileges is found in subsec. (2)(b): To "[p]roceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation."

Though defendant attacks the "slowing ... for safe operation" part of sec. 346.03(2)(b), Stats., as unconstitutionally vague, we need not consider that issue. Both parties agree, as do we, that an ambulance driver on an emergency call is privileged to go through a red stop signal. The question is whether the privilege has limits, and if so, what those limits are.

■

We conclude that sec. 346.03(5), Stats., limits the exercise of privileges granted by sec. 346.03(2). We reach this conclusion because sec. 346.03(1) subjects sec. 346.03(2) privileges to sec. 346.03(5) conditions. We

also reach this conclusion because otherwise the privileges given by sec. 346.03(2) would be absolute. For example, the driver of an authorized emergency vehicle could travel ninety-five miles per hour in a residential neighborhood secure in the knowledge that he or she *cannot be charged with any offense where speed is an element.*

The dissent's concern with civil liability is misplaced.[5] The legislature has decided, as a matter of public policy, that emergency vehicle operators should have a limited privilege other drivers do not have. Exercise of this privilege benefits those in need of emergency services, but at an increased risk of motor vehicle accidents. The legislature, recognizing that violations of a safety statute are negligence *per se,* *Olson v. Ratzel,* 89 Wis. 2d 227, 237–238, 278 N.W.2d 238, 243 (Ct. App. 1979), has chosen to narrow or reduce the area of prohibited conduct. The dissent's disagreement with this legislative choice, as that choice affects civil liability, is not a reason to void that legislative decision. *See Wis. Bankers Ass'n v. Mut. Savings & Loan,* 96 Wis. 2d 438, 454, 291 N.W.2d 869, 877 (1980) (court is not to substitute its judgment for that of legislature); *Sinclair v. H&SS Department,* 77

---

[5]Both of the statutes cited as examples by the dissent have as an element "a high degree of negligence." The dissent does not explain how an emergency operator could be convicted of causing great bodily harm to another when no harm of any sort resulted from the operator's excessive speed. Nor does the dissent explain how, under its theory, the speeding emergency vehicle operator could be negligent, when his or her only negligent act, excessive speed, has been immunized by sec. 346.62(1), Stats. The statutes cited by the dissent are therefore, in reality, further evidence that the legislature did not intend to totally immunize emergency vehicle operators from forfeiture liability.

Wis. 2d 322, 332, 253 N.W.2d 245, 249–50 (1977) (court cannot rewrite statutes under guise of construing them).

The best public protection is afforded by rules of the road enforced by forfeiture, and by knowledge that violation of a safety statute constitutes negligence *per se. Olson,* 89 Wis. 2d at 237, 278 N.W.2d at 243.[6]

We conclude that defendant was required to follow the requirements of sec. 346.03(5), Stats., to qualify for the privilege of proceeding past a red stop signal. Accepting the trial court's findings, we agree that defendant did not operate the ambulance with due regard for the safety of all persons. We therefore affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

GARTZKE, P.J. (*dissenting*). Section 346.03(2)(b), Stats., exempts the operator of an emergency vehicle from a fine or forfeiture for proceeding past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation, provided, as subsec. (3) requires, the vehicle's emergency lights and siren or whistle are on. If those lights and siren or whistle are on, the same driver cannot be charged with what would otherwise be a stopping, standing or

---

[6]Defendant argues that liability for actual and punitive damages is a greater deterrent to reckless driving than forfeiture liability. We disagree. Liability insurance is commonplace, relieving operators of the financial cost of their negligence. The doctrine of *respondeat superior* places the financial burden of employees on their employers. *Giese v. Montgomery Ward, Inc.,* 111 Wis. 2d 392, 415, 331 N.W.2d 585, 596 (1983). Even punitive damages are paid by insurers. *Brown v. Maxey,* 124 Wis. 2d 426, 441–42, 369 N.W.2d 677, 685 (1985). A driver's license, however, is subject to revocation or suspension, a consequence personal to emergency vehicle operators, not their employers or insurers.

parking violation, a speeding violation, or a wrong-way driving or turning violation. In my view, by virtue of subsec. (5), the same operator is not relieved from civil liability for personal injuries or property damage for failure to drive with due regard under the circumstances for the safety of all persons and is not exempt from forfeitures or penalties under other statutes which may result from the consequences of his or her reckless disregard for the safety of others.

Without subsec. (5), the exemption in subsec. (3) might otherwise immunize the operator from the civil liability which ordinarily attaches to violation of a safety statute under decisions such as *Olson v. Ratzel,* 89 Wis. 2d 227, 237–38, 278 N.W.2d 238, 243 (Ct. App. 1979). The "due regard" provision in subsec. (5) prevents this from occurring.

This purpose of the "due regard" provision in subsec. (5) is reflected in sec. 346.19, Stats. Section 346.19(1) requires other drivers to give way to an emergency vehicle, to clear any intersection and to stop until the emergency vehicle has passed. Section 346.19(2) provides, "This section does not relieve the operator of an authorized emergency vehicle from the duty to drive with due regard under the circumstances for the safety of all persons using the highway." Since subsec. (1) imposes no duties on an emergency vehicle operator, the sole purpose of subsec. (2) must be to preserve the civil liability of the emergency vehicle operator. Similarly, that is the sole purpose of the "due regard" provision in sec. 346.03(5), since subsecs. (2)(a)–(d) impose no duties on the emergency vehicle operator except in the case of (2)(b) to slow down.

Without sec. 346.03(5), Stats., the exemptions granted to the operator of an emergency vehicle might further immunize the operator from penalties as a

consequence of reckless disregard for the safety of others. The effect of subsec. (5) is to preserve the operator's liability for a forfeiture or fine under sec. 346.62(1), Stats., and possible conviction of a felony under sec. 940.245(1), Stats.[1]

In my view, if the operator of an emergency vehicle travelled 95 miles per hour with emergency lights and siren on in a residential neighborhood, he or she could not be charged with a speeding violation. However, other circumstances could exist resulting in a violation of sec. 346.62(1), Stats., the penalty for which is a forfeiture of not less than $25 nor more than $200 for the first offense. Sec. 346.65(1), Stats. If great bodily harm resulted from violating sec. 940.245(1), Stats., the operator could be convicted of a Class E felony under sec. 940.245(1), Stats., fined $10,000 and imprisoned for two years. Sec. 939.50(3)(e), Stats.

Because I am unable to convince the majority as to the purpose of subsecs. 346.03(2) and (5), I do not address the claim that the language in subsec. (2)(b) "only after slowing down as may be necessary for safe operation" is unconstitutionally vague.

---

[1]Section 346.62(1), Stats., provides: "It is unlawful for any person to endanger the safety of his own person or property or the safety of another's person or property by a high degree of negligence in the operation of a vehicle."

Section 940.245(1), Stats., provides: "Whoever causes great bodily harm to another by a high degree of negligence in the operation or handling of a vehicle is guilty of a Class E felony."