STEWART J. SMITH vs. BUILDING COMMISSIONER
OF BROOKLINE & others.

Suffolk. February 5, 1975. — May 16, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

Practice, Civil, Zoning appeal, Declaratory judgment. Zoning,
Building permit, Amendment of by-law or ordinance, Board of
appeals.

It was not an abuse of discretion for a single justice of this court to
enter a declaratory judgment regarding the applicability of certain
zoning by-law amendments to a project even though the judgment
would not terminate all issues finally and completely. [768-769]
Where it appeared that in litigation involving the validity of a build-
ing permit for an apartment building project in a town the permit
was adjudged defective in failing to comply with certain provisions
of the town's zoning by-law applicable to the project, but that the
defects were remediable and that under G. L. c. 40A, § 19, the
board of appeals on remand to it ordered a modification of the
permit to cure the defects, it was held that the permit was not void
ab initio but as modified was effective as of the date of its issuance
and that § 11 made inapplicable to the project amendments of the
zoning by-law notice of hearing on which was given, and which
were adopted, after the issuance of the permit. [769-775]
A certificate of temporary occupancy of an apartment building to the
limit allowed by applicable parking requirements in the local
zoning by-law was proper provided that the owner advised poten-
tial tenants of the possibility of eviction by reason of a result
adverse to the owner in pending litigation affecting the project
and gave them in their leases a right to damages in the event of
eviction. [775-776]

CIVIL ACTION commenced in the Supreme Judicial
Court for the county of Suffolk on July 23, 1974.

The case was heard by Wilkins, J.

Lawrence D. Shubow (Morris S. Shubow & Clyde D.
Bergstresser with him) for Stewart J. Smith.

*Kenneth H. Zimble (Joel Z. Eigerman & Rudolph Kass* with him) for Brookline Housing Associates & another; *David M. Roseman,* Town Counsel, for the Building Commissioner of Brookline & another, also with him.

*Raymond V. Picard,* Assistant United States Attorney, for the Secretary of the United States Department of Housing and Urban Development.

HENNESSEY, J. On August 28, 1974, this court decided the case of *Smith* v. *Board of Appeals of Brookline,* 366 Mass. 197 (1974) (*Smith I*). In that case we affirmed a decree of the Superior Court annulling a decision of the board of appeals of the town of Brookline (board) which on appeal by the plaintiff had denied a petition by him for revocation of a building permit issued for an apartment building located at 175 Freeman Street in Brookline. The effect of our decision was to invalidate the building permit as issued and to require that the permit be reviewed and the building brought into compliance with certain amendments (the 1971 amendments) of the zoning by-law, notice of hearing on which had been given and which had been adopted prior to issuance of the permit.[1] These amendments related to environmental design review and parking requirements.

The issues presented in this case (*Smith II*) are: (1) whether the building must comply with amendments to the zoning by-law adopted pendente lite, that is during the appeals process in *Smith I,* see fn. 5; (2) whether there may be partial occupancy of the building pending resolution of the matters contested in *Smith I*; and (3)

---

[1] General Laws c. 40A, § 11, provides in pertinent part: "[I]n a town, no zoning by-law or amendment thereof shall affect any permit issued or any building or structure lawfully begun before notice of hearing before the planning board or the zoning board, as the case may be . . . provided, that construction work under such a permit is commenced within six months after its issue, and the work . . . proceeds in good faith continuously to completion so far as is reasonably practicable under the circumstances."

whether a single justice of this court properly acted within his discretion in entering a declaratory judgment on these matters. The single justice, in issuing his declaratory judgment, ruled that zoning amendments adopted subsequent to the date of the issuance of the building permit contested in *Smith I* did not affect the building and he further ruled that, subject to certain conditions, limited occupancy of the building was permissible. The plaintiff appeals from this decision.

The procedural history of this litigation is somewhat complex; we set forth from the agreed statement of facts those proceedings and dates necessary to an understanding of the claims raised in this appeal. The first step in bringing the appeal in *Smith I* was commenced on June 6, 1972, when Smith filed a petition before the board to revoke a building permit which had been granted on May 26, 1972. An appeal by Smith from an adverse decision by the board was taken to the Superior Court, which court on August 10, 1973, rendered its final decree annulling the action of the board. Oral argument on appeal was heard in this court on May 13, 1974. On July 2, 1974, by petition of the owner, and while decision on *Smith I* was still pending in this court, the building commissioner of Brookline issued a temporary certificate of occupancy for 205 apartments in the building. The plaintiff on July 23, 1974 (*Smith I* had not at this point been decided by this court), brought the present action applying to a single justice in the county court for injunctive relief to bar the occupancy of the building allowed by the temporary certificate, pending the outcome of the appeal in *Smith I*. Action on the injunction by an agreement of the parties, which apparently was not filed with the court, was held in abeyance. As noted, on August 28, 1974, this court, in *Smith I*, decided against the board and held the building to be subject to environmental design review and parking restrictions. Subsequent to the date of decision in *Smith I*

the Brookline Housing Associates[2] (the owner) was granted leave to intervene in *Smith II* and by a motion joined as parties defendant James T. Lynn, as he is the Secretary of the United States Department of Housing and Urban Development, the members of the board and the town of Brookline.[3] Pratt and the owner filed an answer to the original complaint for injunctive relief and filed a counterclaim which sought a declaration that the building, while subject to the 1971 amendments of environmental design review and parking restrictions, was not subject to amendments notice of hearing on which was given and which were adopted after issuance of the building permit of May 26, 1972,[4] challenged in *Smith I*. As noted, the single justice held in favor of the board, ruling that the amendments subsequent to May 26, 1972, did not apply and that partial occupancy was permissible. We affirm that judgment.

Since the propriety of entering the declaratory judgment herein goes to our jurisdiction to address the merits, we turn to that issue first. The plaintiff contends that this is not a proper case for the granting of declaratory relief, and that the single justice erred in rendering such an opinion. The plaintiff submits that there are factual uncertainties outstanding and that given these "speculative" matters, a declaratory judgment will not terminate the controversy between the parties.

---

[2] The complaint was originally brought against James D. Pratt, who is the builder and project manager, and against the acting building commissioner of Brookline.

[3] The town of Brookline apparently did not file an answer; we assume its interests were represented by the board.

[4] Brookline has a two-stage permit process described in *Smith I*, 366 Mass. 197, 198-199 (1974). While there is some uncertainty concerning which of several dates established the date for the issuance of the permit, we assume May 26, 1972, to be the applicable date. Using this outside date imposes no prejudice since the first notice date of hearing on the amendments challenged here is August 31, 1972.

We are not persuaded by these contentions. While it is true that a declaratory judgment will not terminate finally and completely all issues, this case is sufficiently close to the analogous situation in *Belfer* v. *Building Commr. of Boston,* 363 Mass. 439, 441-442 (1973), wherein we allowed declaratory relief. We also note that our scope of review on this question is not whether the single justice should or should not have exercised his discretion, but whether the grant of a declaratory judgment was an abuse of discretion. We think it clearly was not.

We turn next to the issue raised by the counterclaim, to wit, whether the building is subject to and must be brought in compliance with amendments to the town's zoning by-law, notice of hearing on which was given and which were adopted during the pendency of the appeal in *Smith I.*[5] The board in its decision of September 30, 1974, by the remand in *Smith I,*[6] concluded that "there is

---

[5] On October 24, 1972, the town, effective August 31, 1972, amended its zoning by-law to increase the front yard set-back requirements and to revise the environmental design standards so as to require that not more than twenty per cent of parking spaces be located in the open; if applicable, this amendment would increase the set-back of the building and require that an additional sixty-one parking spaces be placed underground. Effective October 25, 1973, the town adopted further amendments, which, if applicable, would further increase the set-back requirements, further define the standards for environmental design review and in addition establish "Buffer Zones" for height. The buffer zone requirement would necessitate the reduction of the height of a segment of the building by twenty feet which would mean cutting off approximately three stories now extant. On March 26, 1974, the town again amended its zoning by-law revising, inter alia, the buffer zone. This amendment would require a twenty-foot reduction in another section of the building, the center piece. Thus the requirements of the 1972 and 1973 amendments, if applicable, are not remediable. Compliance would require destruction and rebuilding of the structure.

[6] The plaintiff has also appealed to the Superior Court from the board's decision of September 30, 1974, modifying the permit after a board finding that the building has been partially brought into compliance with requirements imposed in *Smith I* and could shortly meet

nothing in the [court's] decisions to suggest we must apply the present zoning bylaw [as amended] to this project. In the absence of a direction to do so, we are reluctant to impose such a penalty, which in this case would amount to a forfeiture." That administrative decision on a matter such as this is, of course, not binding on this court. Cf. *Selectmen of Framingham* v. *Civil Serv. Commn.* 366 Mass. 547, 554 (1974). We apply our independent judgment to this issue.

The substantive statutory provisions which appear to have relevance to this issue are G. L. c. 40A, §§ 5 and 11. However, we agree with the conclusion of the single justice that these sections are not precisely on point and, read separately, offer no direct answer to this question which we perceive to be one of first impression.

Section 5, as amended through St. 1969, c. 572, provides in pertinent part that "[e]xcept as provided in section eleven, a zoning ordinance or by-law or any amendment thereof shall not apply to existing buildings or structures." However, as the single justice found, it is quite clear that, in order to fall within the protection of § 5, the building must lawfully exist before the fact and a building constructed under an allegedly unlawful permit cannot be said to exist lawfully. Cf. *Opinion of the Justices*, 234 Mass. 597, 606 (1920). Moreover, at the time the contested zoning by-law amendments were adopted, it appears that the building was not an existing structure but was in the process of construction. Cf. *Brett* v. *Building Commr. of Brookline*, 250 Mass. 73, 81 (1924).

Of more immediate relevance is § 11 which provides, inter alia: "[I]n a town, no zoning by-law or amendment thereof shall affect any permit issued or any building or structure lawfully begun before notice of hearing before

full compliance. The plaintiff has also appealed to the board from the action of the building commissioner in granting the certificate of temporary occupancy. See fn. 8, *infra*.

the planning board . . . provided, that construction work under such a permit is commenced within six months after its issue, and the work, whether under such permit or otherwise lawfully begun, proceeds in good faith continuously to completion." However, as the single justice noted, "What § 11 does not state is what happens if a permit which is issued or a building which is apparently lawfully commenced is later held, respectively, to have been improperly issued or unlawfully commenced."

Thus, the situation presented here falls between the lines of what may be considered the saving clause of § 11. The plaintiff's position is that, since the permit granted on May 26, 1972, has been determined to be defective by this court's decision in *Smith I*, that permit is null and void and that consequently there is no outstanding permit. Thus, the plaintiff submits, the owner is entitled to no protection from subsequent zoning by-law amendments and the owner must apply for a new permit subject to the currently existing zoning by-law as amended.[7]

We are not persuaded by this line of reasoning for it rests on the assumption that the only course open to the board following our decision in *Smith I* was to revoke the May 26, 1972, permit as illegally granted *ab initio*. On the contrary, the decision in *Smith I* did not compel ex post facto revocation of the permit but only held that the project must conform to the 1971 amendments to the zoning by-law.

---

[7] The premier case cited by the plaintiff in support of this position, *Eastlake Community Council v. Roanoke Associates, Inc.* 82 Wash. 2d 475 (1973), is inapposite. The State of Washington had no statutory equivalent to § 11. Moreover, the date of application for a permit, rather than the date of issuance, was controlling in that State. In addition, the passage of a zoning ordinance, rather than the notice of hearing was determinative whether a zoning amendment would apply to the building under construction.

The final decree of the Superior Court, affirmed in *Smith I*, annulled the decision of the board on the plaintiff's appeal denying his petition to revoke the building permit; the decree did not annul the building permit itself. Where either the trial or appellate court has desired to effect a particular result, it may direct that specific acts be taken in addition to annulling the prior board's decision. Cf. *Tambone* v. *Board of Appeal of Stoneham*, 348 Mass. 359, 365 (1965). We did not so direct in *Smith I* but rather, in effect, remanded to· the board in order that it might review whether the building could be modified in accordance with environmental design review and parking restrictions and further that it might review whether the permit should be modified. Accordingly, decision thereon was a matter within the jurisdicition of the board, subject, of course, to judicial review.

In exercising appellate powers under G. L. c. 40A, § 15, the board is specifically empowered to hear appeals from decisions taken by a person aggrieved by the action of the building commissioner. See G. L. c. 40A, § 13. In so doing, "a board of appeals may, in conformity with the provisions of this chapter, reverse or affirm in whole or in part, *or may modify, any order or decision, and may make such order or decision as ought to be made, and to that end shall* have all the powers of the officer from whom the appeal is taken and may issue or direct the issue of a permit" (emphasis added). G. L. c. 40A, § 19, inserted by St. 1954, c. 368, § 2. Cf. *Dion* v. *Board of Appeals of Waltham*, 344 Mass. 547, 553 (1962). We think these broad powers apply not only where the appeal is going up the scale from the building commissioner to the board, and perhaps to the appellate courts, but also when the process is reversed, and questions as to compliance with zoning requirements are necessarily before the board again on remand as a result of decision in the appellate courts or the Superior Court.

In its decision rendered on September 30, 1974, the board, following the decree in *Smith I*, acted to fulfil its obligation under § 19. It concluded that environmental design had been satisfied but that the building did not comply with the 1971 zoning amendment defining parking restrictions and that the building must be brought in compliance therewith.[8]

Significantly, the decision of the board specifically provides: "The matter is now returned to the Building Commissioner for *modification of the permit* granted May 26, 1972" (emphasis added). Thus the board's disposition of the matter is in complete accordance with our reading of its powers under § 19. We note that the board did not void the original permit nor, in our opinion, was it required to do so, although that result is an option available.[9]

Since the permit was not annulled, but rather modified by the decision of the board, the permit has effect nunc pro tunc for purposes of the protection ensured by § 11.

Thus, when G. L. c. 40A, § 11, is read in conjunction with § 19, the conclusion compelled is that a by-law amendment adopted during litigation contesting the validity of a building permit, where the claim raised is

---

[8] We express no opinion as to whether the board correctly ruled on these matters, as they are not before this court. We understand that these findings are being contested in other proceedings (see fn. 6, *supra*), the claim being that the defects are irremediable and that, therefore, the building cannot as matter of law be brought into compliance with the *Smith I* requirement. For purposes of this decision, we assume that the defects are remediable and that the building can be brought into compliance with *Smith I*.

[9] In certain instances modification of a permit found defective on appeal may be inappropriate. In such cases the permit is void ab initio and subsequent zoning amendment would have full force and effect. The controlling principle is in essence that the builder demonstrate a good faith effort to comply with the applicable law. And, as discussed in this opinion, if the defects due to the by-law are irremediable, modification of a permit may be unavailable depending on the nature of the defect and its impact on the zoning scheme.

that the permit fails to meet certain applicable provisions of the zoning by-law, does not affect the original permit, although found defective on appeal, as long as the defects are remediable and the board directs a modification of the permit.[10]   In this case notice of hearing on the contested amendments was given and they were adopted subsequent to May 26, 1972, and the building was under construction; therefore the amendments *post* May 26, 1972, are inapplicable.

We believe our construction of the interrelationship between § 11 and § 19 will further the legislative intent underlying § 11, which is to avoid the uncertainty and hardship involved where a town seeks to amend its zoning by-law affecting land for which a building permit has issued and on which construction has begun.[11]   See preamble to St. 1941, c. 176, enacting a predecessor to G. L. c. 40A, § 11.   See also 49 A. L. R. 3d 1150 (1973). Finally, and of some importance, our construction of these appellate sections allows for the preservation of appellate rights.   Indeed, the analogous entering of a decree nunc pro tunc is to ensure that persons are not prejudiced in their appellate rights by the time required to resolve controversies finally.

As the single justice observed, the result we reach is that which would have occurred "if no challenge to the

---

[10] It is well established that if all requisite conditions are met the permit shall be issued.   *Ouellette* v. *Building Inspector of Quincy*, 362 Mass. 272 (1972).

[11] Our decision is also in accordance with general equitable principles allowing for remedial action in order to avoid unnecessary destruction.   *Sterling* v. *Poulin*, 2 Mass. App. Ct. 562 (1974).   *Building Inspector of Falmouth* v. *Haddad*,      Mass. App. Ct.      (1975) (324 N.E. 2d 386), further appellate review granted, *post*, 912 (1975). However, because of our resolution of these issues we are not forced to consider whether this building falls within that limited class of cases where, although conformance with applicable law is impossible, destruction of the building is not ordered because of equitable principles.   See *Marblehead* v. *Deery*, 356 Mass. 532 (1969); *Kelloway* v. *Board of Appeal of Melrose*, 361 Mass. 249 (1972).

permit had been raised by appeal and the issue had been later raised by a petition in the nature of a writ of mandamus." We believe the same result is reached by a logical and reasonable construction of the board's powers under § 19 and the saving clause effect of § 11.

Our holding with respect to the nonapplicability of amendments *post* May 26, 1972, assuming that the board's finding that the defects are remediable is legally sustainable (see fns. 6 and 8), is largely dispositive of the question of temporary occupancy. Had we determined that the contested subsequent amendments had force and effect, occupancy would seem prohibited. Conversely, as did the single justice,[12] we feel that occupancy is permissible to the limit supported by present parking space under the parking requirement found applicable in *Smith I.* The parking requirement is designed to control where cars are stored and as long as occupancy is so limited that purpose is served.

We realize that, despite our holdings, this case may hinge to a large degree on whether the § 19 modification of the May 26, 1972, permit is valid. That in turn depends on whether the original defects are remediable. That appeal is presently before the Superior Court and we express no opinion on the matter relating, as it does, to the issue whether the building may be brought into compliance with the requirements of *Smith I.*

Further, the plaintiff on other legal grounds appears to be appealing to the board the extension of the temporary certificate of occupancy. We do not intrude on this matter except to require, as the parties seem to agree is appropriate, that the certificate of temporary occupancy be conditioned on the owner's advising potential tenants of the possibility of eviction if the owner is unsuccessful in other litigation currently pending, and on a tenant's

---

[12] The single justice treated the injunction as a stay pending appeal and denied it.

being given the right in his or her lease to liquidated damages in the event of a legal obligation to vacate. The judgment of the single justice is affirmed.

*So ordered.*